```
 1                   UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
 2

 3    -------------------------------X
      UNITED STATES OF AMERICA,
 4                                    :  CR-02-140
                                         (ILG)
 5        -against-                   :  United States Courthouse
                                         Brooklyn, New York
 6    LIBORIO BELLOMO and MICHAEL
      RAGUSA,                         :  April 7, 2003
 7              Defendants.              10:15 a.m.
      -------------------------------X
 8
                     TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
 9                   BEFORE THE HONORABLE I. LEO GLASSER
                     UNITED STATES DISTRICT COURT JUDGE
10

11
      APPEARANCES:
12
      For the Government:        ROSLYNN R. MAUSKOPF, ESQ.
13                               UNITED STATES ATTORNEY
                                 BY:  PAUL WEINSTEIN, AUSA
14                                    DANIEL DORSKY, AUSA
                                      JOEY LIPTON, AUSA
15                               One Pierrepont Plaza
                                 Brooklyn, New York 11201
16

17
      For Defendant Bellomo:     FLORA EDWARDS, ESQ.
18                               DAVID BRIETBART, ESQ.

19
      For Defendant Ragusa:      THOMAS J. LEE, ESQ.
20

21

22
      Official Court Reporter:          Stephanie Drexler, RPR
23    Ph. (718) 260-2644               225 Cadman Plaza East
      Fax (718) 260-4505               Brooklyn, New York 11201
24
            Proceedings recorded by computerized stenography.
25                  Transcript produced by CAT.
```

1              THE CLERK:  Criminal cause for pleading U.S.A. v.

2    Liborio Bellomo and Michael Ragusa.

3              MS. EDWARDS:  Good morning, your Honor.

4              Flora Edwards and David Brietbart for defendant

5    Liborio Bellomo.

6              MR. LEE:  Thomas Lee for Mr. Ragusa at liberty and

7    present in court.

8              THE COURT:  Ready to proceed, Ms. Edwards?

9              MS. EDWARDS:  Yes, your Honor.

10             THE COURT:  Mr. Lee, are you ready?

11             MR. LEE:  Yes, your Honor.

12             THE COURT:  Would you swear the defendants.

13             (Defendants sworn)

14             THE CLERK:  Give your name.

15             DEFENDANT RAGUSA:  Michael Ragusa.

16             DEFENDANT BELLOMO:  Liborio Bellomo.

17             THE COURT:  Mr. Ragusa, you just swore to tell the

18   truth.  Everything you are going to say to me this morning

19   should be truthful if you don't want to commit the crime of

20   perjury.

21             Do you understand that?

22             DEFENDANT RAGUSA:  Yes.

23             THE COURT:  Mr. Bellomo, do you understand?

24             DEFENDANT BELLOMO:  I understand that.

25             THE COURT:  How old are you, Mr. Ragusa?

1              DEFENDANT RAGUSA:  37.

2              THE COURT:  How far have you gone in school?

3              DEFENDANT RAGUSA:  High school.

4              THE COURT:  Have you taken any pills, medicines or

5    drugs of any kind in the past few days?

6              DEFENDANT RAGUSA:  Excuse me?

7              THE COURT:  Have you taken any pills or medicines or

8    drugs within the past few days?

9              DEFENDANT RAGUSA:  No.

10             THE COURT:  Are you currently under the care of a

11   doctor?

12             DEFENDANT RAGUSA:  No.

13             THE COURT:  Do you understand why you are here?

14             DEFENDANT RAGUSA:  Yes.

15             THE COURT:  Have you understood everything I have

16   said to you so far?

17             DEFENDANT RAGUSA:  Yes.

18             THE COURT:  Mr. Lee, do you have any questions about

19   your client's competence to participate in these proceedings?

20             MR. LEE:  No.

21             THE COURT:  I make a finding to that effect.

22             Mr. Bellomo, how old are you?

23             DEFENDANT BELLOMO:  46.

24             THE COURT:  How far have you gone in school?

25             DEFENDANT BELLOMO:  One year of college.

1          THE COURT:  Are you currently being treated by a

2     doctor?

3          DEFENDANT BELLOMO:  No.

4          THE COURT:  Have you taken any medicines or pills or

5     drugs of any kind within the past few days?

6          DEFENDANT BELLOMO:  No.

7          THE COURT:  You understand why you are here?

8          DEFENDANT BELLOMO:  Yes.

9          THE COURT:  You've understood everything I have said

10    to you so far?

11         DEFENDANT BELLOMO:  Yes.

12         THE COURT:  Ms. Edwards, do you have any questions

13    about your client's competence to participate in today's

14    proceedings?

15         MS. EDWARDS:  No.

16         THE COURT:  I make a finding to that effect.

17         I understand, Mr. Bellomo, that you want to plead to

18    Count One of the indictment and Racketeering Acts One and

19    Three.

20         Have you gone over the indictment with your lawyers?

21         DEFENDANT BELLOMO:  Yes.

22         THE COURT:  Would you like me to read the portions

23    of the indictment which you want to plead to?

24         DEFENDANT BELLOMO:  No need to.

25         THE COURT:  Count One charges you with RICO,

1   racketeering.  And Racketeering Act One charges you with an

2   extortion conspiracy concerning the piers of the New York, New

3   Jersey and Miami waterfronts and also with a Hobbs Act

4   conspiracy with respect to obtaining wages and union benefits,

5   union positions from the ILA.

6             You have discussed all that with your lawyers?

7             DEFENDANT BELLOMO:  Yes, I have.

8             THE COURT:  And Racketeering Act Three charges you

9   with fraud and money laundering.

10            You don't want me to read those to you right now?

11            DEFENDANT BELLOMO:  No.

12            THE COURT:  You have gone over the plea agreement

13   with your lawyers, have you, Mr. Bellomo?

14            DEFENDANT BELLOMO:  Yes, I have.

15            THE COURT:  Mr. Ragusa, you have gone over the plea

16   agreement with Mr. Lee?

17            DEFENDANT RAGUSA:  Yes, I have.

18            THE COURT:  Has Mr. Lee told you that the maximum

19   sentence that the statute you are charged with violating

20   provides for is 20 years?

21            DEFENDANT RAGUSA:  Yes.

22            THE COURT:  That would be followed by a period of

23   supervised release of up to three years.

24            DEFENDANT RAGUSA:  Yes.

25            THE COURT:  You understand what supervised release

1    is?

2            DEFENDANT RAGUSA:  Yes.

3            THE COURT:  You were also told you could be fined up

4    to $250,000?

5            DEFENDANT RAGUSA:  Yes.

6            THE COURT:  Or twice the gross gain derived from the

7    crimes with which you are charged or twice the gross loss,

8    whichever is larger, were you told that?

9            DEFENDANT RAGUSA:  Yes.

10            THE COURT:  You were also told that you would be

11    required to pay a special assessment of $100?

12            DEFENDANT RAGUSA:  Yes.

13            THE COURT:  Mr. Bellomo, did you hear what I have

14    just told Mr. Ragusa?

15            DEFENDANT BELLOMO:  Yes.

16            THE COURT:  Your lawyers have told you what the

17    statutory penalty would be, the fine, special assessment of

18    $100, supervised release; you understand all that?

19            DEFENDANT BELLOMO:  Yes.

20            THE COURT:  I would normally go over what the

21    guideline implications might be.  You understand what

22    guidelines are, I'm sure.  Ever since 1987, sentencing in

23    federal courts is mandated by guidelines but because you and

24    Mr. Ragusa entered into an agreement with the government

25    pursuant to what is known as 11(c)(1)(c) of the Federal Rules

1   of Criminal Procedure, let me go over what that is all about

2   and explain that to you.

3           To begin, you -- and when I say "you," I'm referring

4   to both you, Mr. Bellomo, and you, Mr. Ragusa -- you have each

5   agreed with the government that a specific sentence would be

6   the appropriate disposition in this case.  That agreement is

7   required to be disclosed in open court by the federal rules

8   that I have made reference to and I must either accept it or

9   reject it or defer some decision about it until after I have

10  had an opportunity to study a presentence report.

11          The plea agreements which you and Mr. Ragusa, each

12  of you, have entered into with the government provides for an

13  agreed-upon sentence for you, Mr. Bellomo, of 48 months to run

14  consecutively with the sentence you are now serving plus three

15  years of supervised release and $100 special assessment.

16          Now, the plea agreement, both Mr. Bellomo and

17  Mr. Ragusa, I'm looking at page 3, I think it reads precisely

18  the same for each.  About six or seven lines down from the

19  top:  The defendant also agrees as a condition of this plea

20  that he will enter into a consent decree involving injunctive

21  relief which is expressly incorporated in this agreement.

22          I didn't see any injunctive relief expressly

23  incorporated in this agreement.  What is that referring to?

24          MR. WEINSTEIN:  Your Honor, I have here a consent

25  judgment and decree that has been signed by both of these

1    defendants.

2              THE COURT:  Can I see it?

3              MR. WEINSTEIN:  Yes, your Honor.  (Handing)

4              THE COURT:  I will deal with that in due time.

5              Mr. Ragusa, the agreed-upon sentence provided for in

6    the agreement that you have reached with the government is a

7    sentence of 30 months plus three years of supervised release

8    plus a $100 special assessment plus also the injunctive relief

9    to which I just made reference to.

10             Mr. Bellomo, you understand that?

11             DEFENDANT BELLOMO:  Yes.

12             THE COURT:  Mr. Ragusa, you understand that?

13             DEFENDANT RAGUSA:  Yes.

14             THE COURT:  Now, in each of your cases, the sentence

15   which has been agreed upon is considerably less than the

16   sentence which would have been imposed had the guidelines been

17   applicable.  The government has agreed not to oppose a motion

18   for a downward departure at the time of sentence and which I

19   will deal with at the appropriate time.

20             The government has also agreed in your 11(c)(1)(c)

21   plea agreement that they are not going to prosecute for all

22   the other crimes in which you may be named in this indictment

23   and at the appropriate time they will ask me to dismiss the

24   open counts against you.

25             The law requires that I either approve or disapprove

1    that part of the agreement and I will reserve my decision with

2    respect to that.

3              I also want to make sure that you understand your

4    pleas are conditional upon the other five people who are yet

5    to plead here this afternoon, pleading guilty.

6              If any one of the remaining five defendants does not

7    plead guilty this morning or subsequently seeks to withdraw

8    their plea, to put it colloquially, all bets are off and the

9    government can void these plea agreements and the government

10   can proceed to prosecute with respect to all the crimes in

11   which you are named in this indictment and you won't be

12   permitted to withdraw a plea that you may enter into here

13   today.

14             Do you understand that, Mr. Bellomo?

15             DEFENDANT BELLOMO:  Yes, your Honor.

16             THE COURT:  You have also agreed that you are going

17   to waive your right to appeal the sentence which will be

18   imposed upon you and you have also agreed to waive any

19   objection to or challenge to the validity of the proceedings

20   here this morning.

21             Do you understand you have given up those rights,

22   Mr. Bellomo?

23             DEFENDANT BELLOMO:  Yes, sir.

24             THE COURT:  You have given up those rights

25   voluntarily, nobody forced you to do that?

1          DEFENDANT BELLOMO:  No.

2          THE COURT:  Do you understand, Mr. Ragusa, you have

3     given up those rights not to appeal a sentence to be imposed,

4     not to challenge the validity of these proceedings?

5          DEFENDANT RAGUSA:  Yes.

6          THE COURT:  Anybody force you to give up those

7     rights?

8          DEFENDANT RAGUSA:  No.

9          THE COURT:  You are giving them up voluntarily?

10         DEFENDANT RAGUSA:  Yes.

11         THE COURT:  The agreement also specifically provides

12    that it's not binding on any of the prosecuting authorities

13    and it also doesn't preclude any civil or administrative

14    proceeding being pursued with respect to each of you.

15         Do you understand all that, Mr. Bellomo?

16         DEFENDANT BELLOMO:  Yes, I do.

17         THE COURT:  Mr. Ragusa?

18         DEFENDANT RAGUSA:  Yes.

19         THE COURT:  Anything I have explain to you that you

20    don't understand, don't hesitate to tell me.

21         With respect to the counts to which I'm told you

22    wish to plead, let me read them to you, I think it would be

23    the appropriate procedure to be followed.

24         You have gone through all of the introductory

25    paragraphs, haven't you, those paragraphs which set out an

1    enterprise, the enterprise being the Genovese family.  Then it

2    goes on to describe the structure of the family.

3            I understand that there is some rule which says

4    nobody can acknowledge there is an organized family but I'm

5    just telling you what it is that all of these introductory

6    paragraphs provide.

7            And you have been through those, have you,

8    Mr. Bellomo?

9            DEFENDANT BELLOMO:  Yes.

10           THE COURT:  You don't want me to read them?

11           DEFENDANT BELLOMO:  No.

12           DEFENDANT RAGUSA:  No.

13           THE COURT:  Let me read Count One.  Count One

14    incorporates all those introductory paragraphs then says

15    between 1987 and the date of filing the superseding

16    indictment, which I think is sometime this year, this last

17    superseding indictment --

18           MR. WEINSTEIN:  March 19 of this year.

19           THE COURT:  2003.  Those dates are approximate and

20    inclusive, within the Eastern District of New York and

21    elsewhere, the defendants, Liborio Bellomo also known as

22    "Barney," Tommy Cafaro, Pasquale Falcetti, also known as

23    "Patty," Andrew Gigante, Vincent Gigante, Ernest Muscarella,

24    also known as "Ernie," and Michael Ragusa, also known as

25    "Mickey," together with others, being persons employed by and

 1    associated with the Genovese family, an enterprise which

 2    engaged in and the activities of which affected interstate and

 3    foreign commerce, knowingly and intentionally conducted and

 4    participated directly and indirectly in the conduct of the

 5    affairs of that enterprise through a pattern of racketeering

 6    activity as defined in the United States Code consisting of

 7    the racketeering acts set forth below.

 8              For each racketeering act alleged, the commission of

 9    any one of the racketeering acts sub parts constitutes

10    commission of the racketeering act.

11              In Racketeering Act One, it alleges that in or about

12    and between 1994 and the date of the filing of this

13    superseding indictment, which was in March of this year, those

14    dates are approximate and inclusive, within the Eastern

15    District of New York and elsewhere, the defendants, whose

16    names I have read just a minute ago, together with others

17    knowingly and intentionally conspired to obstruct, delay and

18    affect commerce in the movement of articles and commodities in

19    commerce by extortion.  And that the defendants and their

20    coconspirators agreed to obtain money from owners, officers,

21    employees and agents of businesses operating at the piers in

22    the New York metropolitan area, northern New Jersey and Miami,

23    Florida with their consent.  The consent was to be induced by

24    the wrongful use of actual and threatened force, violence and

25    fear and to obtain property, namely, the

1    International Longshoremen Association's labor union positions

2    and money including wages and employee benefits paid in regard

3    to those labor union positions from such union members and

4    officers, agents, delegates, employees and other

5    representatives with their consent, which consent was to be

6    induced by the wrongful use of actual and threatened force,

7    violence and fear in violation of Title 18 of the United

8    States Code.

9            Racketeering Act Three reads:  Between January of

10   '96 and July of '97, those dates being approximate and

11   inclusive, within the Eastern District of New York and

12   elsewhere, the defendants, Liborio Bellomo, Thomas Cafaro,

13   Pasquale Falcetti, Michael Ragusa and others, knowingly and

14   intentionally devised a scheme and artifice to defraud

15   employee pension and welfare benefit plans jointly controlled

16   by the Metropolitan Marine Maintenance Contractors

17   Association, Inc., hereinafter "Metro" and the ILA,

18   hereinafter collectively referred to as "Metro-ILA," and the

19   participants and beneficiaries of the plans, of the right to

20   the honest services of the plans' officers, agents,

21   administrators and fiduciaries, and to obtain money and

22   property by means of materially false and fraudulent

23   pretenses, representations and promises.

24            For the purpose of executing and attempting to

25   execute the scheme to defraud, the defendants, whose names I

1  have just read, and others knowingly and intentionally placed

2  and caused to be placed in Post Offices and authorized

3  depositories for mail matter to be delivered by the United

4  States Postal Service according to the directions thereon the

5  following mail matter in violation of the appropriate sections

6  of Title 18 of the United States Code.

7          On April 10, 1996, there was a mailing to Harold

8  Daggett at Local 1804-1 ILA, 5000 Westside Avenue, North

9  Bergen, New Jersey 07047.

10         There was another mailing on May 16, 1996 to Harold

11  Daggett at Local 1804-1 ILA, 5000 Westside Avenue, North

12  Bergen, New Jersey 07047.

13         On the following day, May 17, 1996, there was a

14  mailing to Michael Ragusa at Metro-ILA Welfare Fund, 301 Route

15  17 North, 7th floor, Rutherford, New Jersey 07070.

16         Sub-Predicate of Racketeering Act Three,

17  Sub-Predicate D reads:  Between January of '96 and July of

18  '97, those dates being approximate and inclusive, within the

19  Eastern District of New York and elsewhere, the defendants,

20  Liborio Bellomo, Thomas Cafaro, Pasquale Falcetti and Michael

21  Ragusa, together with others knowingly and intentionally

22  conspired to conduct financial transactions affecting

23  interstate commerce that involved the proceeds of specified

24  unlawful activity, namely mail fraud, wire fraud and

25  embezzlement of Metro-ILA's pension and welfare benefit funds

1    knowing that the property involved in the financial

2    transactions would and did involve the proceeds of unlawful

3    activity with the intent to promote the carrying on of the

4    specified unlawful activity and knowing that the transactions

5    were designed to conceal and disguise the nature, location,

6    source, ownership and control of those proceeds and to avoid a

7    transaction reporting requirement under federal law in

8    violation of the appropriate sections of the United States

9    Code.

10          You have discussed all those counts with your

11   lawyers, Mr. Bellomo?

12          DEFENDANT BELLOMO:  Yes.

13          THE COURT:  Mr. Ragusa?

14          DEFENDANT RAGUSA:  Yes.

15          THE COURT:  I want to make sure each of you

16   understands you have a perfect right to say to me this morning

17   you are not guilty of those charges.  If you tell me that,

18   there will be a speedy and public trial by jury.  You will be

19   represented by your respective lawyers at that trial.  You

20   will be presumed innocent of these charges at that trial.

21          You understand that, Mr. Bellomo?

22          DEFENDANT BELLOMO:  Yes.

23          THE COURT:  Mr. Ragusa, do you understand that?

24          DEFENDANT RAGUSA:  I understand it.

25          THE COURT:  When I say you will be presumed

1  innocent, that means you won't have to prove that you didn't

2  commit any of these crimes.  You wouldn't have to prove

3  anything.  The government would have to prove that you did.

4  And the government would have to prove it so a unanimous jury

5  of 12 people would be satisfied beyond a reasonable doubt that

6  you did.

7          Do you understand that?

8          DEFENDANT BELLOMO:  Yes.

9          THE COURT:  Mr. Ragusa, do you understand that?

10         DEFENDANT RAGUSA:  Yes.

11         THE COURT:  At that trial, you would have a right to

12  confront your accusers.  You would have a right to see who the

13  witnesses against you would have been.  Your lawyers would

14  have a right to cross-examine those persons for you and to

15  object to any evidence which they believe this Court shouldn't

16  receive.

17         Do you understand that?

18         DEFENDANT BELLOMO:  Yes.

19         THE COURT:  Mr. Ragusa, do you understand that?

20         DEFENDANT RAGUSA:  Yes.

21         THE COURT:  At that trial too, you could, if you

22  wanted to, testify on your own behalf under oath.  You could

23  have witnesses summoned here to testify for you.  You could

24  offer such evidence at that trial as you think might be useful

25  to you.  But you needn't do any of those things.  You have a

1    right to remain silent at your trial, say nothing and do

2    nothing.

3            If you did remain silent, I would instruct the jury

4    that it would be wrong for them to draw the inference you are

5    guilty because you are not offering any explanation for your

6    presence in this courtroom.  I would explain to the jury that

7    you are exercising your privilege which our Constitution

8    confers upon you, the privilege against self incrimination.

9    In simple terms, that means you can't be forced to convict

10   yourself out of the words of your own mouth.

11           Do you understand all that?

12           DEFENDANT BELLOMO:  Yes.

13           THE COURT:  Mr. Ragusa?

14           DEFENDANT BELLOMO:  Yes.

15           THE COURT:  If you plead guilty this morning, if I

16   accept that plea, you will be giving up all these rights that

17   I have just recited for you, there will not be a trial and the

18   government is not going to be called upon to prove that you

19   committed these crimes so that a unanimous jury of 12 people

20   would be satisfied that you did and you will not have the

21   opportunity to see who the witnesses against you would be.  A

22   judgment of guilt will be entered.  You will be sentenced on

23   another day.

24           Do you understand all that?

25           DEFENDANT BELLOMO:  Yes.

1                THE COURT:  Mr. Ragusa?

2                DEFENDANT RAGUSA:  Yes.

3                THE COURT:  Do you understand all that?

4                DEFENDANT RAGUSA:  Yes.

5                THE COURT:  Now, let me tell if you went to trial on

6    Count One and the racketeering acts with which you are

7    charged, the government would have to prove the following

8    things.  The government would have to prove first that there

9    was an enterprise in existence.  The indictment alleges that

10   the enterprise is the Genovese family.  The government would

11   have to prove the existence of an enterprise which is very

12   simply defined as a group of persons who are associated in

13   fact for the purpose of achieving some common objective.

14                An enterprise needn't be a legal entity.  It doesn't

15   have to be a legal corporation or a legal partnership or

16   anything of that sort.  It's enough if the government proves

17   that a group of people were associated together as a matter of

18   fact for the purpose of engaging in a course of conduct and

19   for the purpose of achieving some common objective.

20                The government would have to prove that between 1987

21   and February '02 or March of this year that each of you and

22   others was employed by and associated with the enterprise,

23   that you knowingly and intentionally participated in the

24   affairs of that enterprise through a pattern of racketeering

25   activity.  A pattern of racketeering activity is defined by

1    the statute as two criminal acts.  Criminal acts are set out

2    in a long list in Section 1961 of Title 18.

3           The government would have to prove that the

4    enterprise had a common goal which in this case is alleged to

5    be the commission of a whole variety of crimes for the purpose

6    of making money for its members.  And the government would

7    have to prove that these racketeering acts had some connection

8    to the affairs of the enterprise and were committed within ten

9    years of each other, at least one five years before this

10   indictment was returned which would have been sometime in

11   January of 1997 was the initial indictment.

12          THE COURT:  The government would have to prove that

13   the affairs of the enterprise affected interstate commerce.

14          Have you discussed that with your lawyer?

15          DEFENDANT BELLOMO:  Yes.

16          DEFENDANT RAGUSA:  Yes.

17          THE COURT:  I will ask each of you first whether

18   it's true, Mr. Bellomo, that you were associated with a group

19   of persons, affiliated with persons who were associated in

20   fact, persons who had a common purpose of making money for

21   their members, people who were associated together as a matter

22   of fact by the commission of a whole variety of crimes?  Were

23   you a member of that enterprise?  Was there such an

24   enterprise?

25          DEFENDANT BELLOMO:  Yes.

1          THE COURT:  You were affiliated with that

2    enterprise, participated in its affairs?

3          DEFENDANT BELLOMO:  Yes.

4          THE COURT:  This enterprise had a structure, a

5    formal or informal ongoing structure, it had a boss, an

6    underboss, consigliere and so on, it had a structure, a formal

7    or informal structure?

8          DEFENDANT BELLOMO:  Can I confer?

9          THE COURT:  Yes.

10         (Pause)

11         THE COURT:  Mr. Bellomo, let me put it differently.

12   I understand there are some restrictions or whatever it is,

13   some rule which says that you can't acknowledge the existence

14   of an organized crime family.  I understand all that.  I have

15   been through this I don't know how many times.

16         What I want to know from you, is it true that you

17   were associated with a group of persons and there was a

18   structure under which or pursuant to which this group of

19   people operated?  It wasn't just some random group.  There was

20   a structure.  There was a leader.  There were associates.

21   There were members.  There were persons who had different

22   levels of participation or membership in this group.

23         Is that true?

24         DEFENDANT BELLOMO:  Yes, your Honor.

25         THE COURT:  You participated in the activities of

1    that group in some meaningful way?

2              DEFENDANT BELLOMO:  Yes.

3              THE COURT:  You were aware of the activities of that

4    group during the course of your participation in it?

5              DEFENDANT BELLOMO:  Yes.

6              THE COURT:  In connection with your participation in

7    the affairs of that group, you committed two racketeering

8    acts.

9              Let me turn to Racketeering Act One which charges

10   you with a conspiracy to obstruct, delay and affect commerce

11   by extortion by agreeing to obtain money from businesses

12   operating at the piers in the New York metropolitan area,

13   northern New Jersey and Miami.  You obtained money from the

14   owners and officers, employees of those businesses with their

15   consent but you got their consent by inducing it by wrongful

16   use of force or violence or threatened use of force or

17   violence and fear.

18             When I say that there was a conspiracy,

19   Mr. Bellomo, if you had gone to trial, the government would

20   have had to prove that you and one or more of the other

21   persons named as codefendants had an agreement, a conspiracy,

22   simply defined as an agreement between two or more people to

23   commit a crime, you being one of them.

24             The government would have to prove there was an

25   agreement between you and one or more people to extort money

1   from businesses operating on the piers in the metropolitan New

2   York area, northern New Jersey and Miami and obtaining money

3   from the owners or employees or agents of those businesses by

4   the use or threatened use of violence, force or fear.

5            Did you have such an agreement?

6            MR. BRIETBART:  Your Honor.

7            THE COURT:  I'm taking the allocution.  I will take

8   it the way I want this allocution to be made.  That's what he

9   has been charged with.

10           Is that clear?

11           MR. BRIETBART:  Yes, your Honor.  But I do have a

12   job and it is with an understanding with the government that

13   we submitted an allocution.

14           THE COURT:  The allocution has to satisfy me.  This

15   is a conspiracy charge.

16           I want to know whether you had such an agreement

17   with one or more other people to obtain money from the owners

18   or employees or agents of businesses functioning on the piers

19   of the New York metropolitan area, New Jersey and Miami?

20           DEFENDANT BELLOMO:  Your Honor, yes, I understand

21   through fear of economic harm.

22           THE COURT:  Whatever the harm may be.

23           DEFENDANT BELLOMO:  That was my understanding.

24           THE COURT:  The harm was induced by the threatened

25   or actual use of force or fear, yes?

1            DEFENDANT BELLOMO:  Yes, of economic harm.

2            THE COURT:  The same is true with respect to the

3    ILA, the labor union positions, money, wages and employee

4    benefits from union members, you obtained those benefits as

5    well pursuant to an agreement that you and others had to

6    obtain those properties with the consent of the persons from

7    whom you were obtaining it but the consent was obtained by

8    force or the threatened use of force of violence or fear; is

9    that true?

10           DEFENDANT BELLOMO:  Yes, fear of economic harm, I

11   understand it to be, your Honor.

12           THE COURT:  Now, with respect to Racketeering Act 3,

13   you are charged with a scheme to defraud employee pension and

14   welfare benefit plans which were jointly controlled by the

15   Metropolitan Marine Maintenance Contractors Association and

16   the beneficiaries of those plans to the honest services of the

17   plans' officers, employees, fiduciaries and to get money or

18   property through materially false and fraudulent

19   representations.

20           Is that true?

21           DEFENDANT BELLOMO:  Yes.

22           THE COURT:  There was such a scheme to defraud?

23           DEFENDANT BELLOMO:  Yes, your Honor.

24           THE COURT:  And for the purpose of executing that

25   scheme, there were a number of mailings which I made reference

1   to, a mailing to Harold Daggett on April 10 and May 16 of '96

2   and to Michael Ragusa on May 17 of '96.

3          Is that true?

4          DEFENDANT BELLOMO:  I understand the mailing was

5   sent to Michael Ragusa.

6          THE COURT:  That was for the purpose of executing

7   the scheme to defraud?

8          DEFENDANT BELLOMO:  Yes, your Honor.

9          THE COURT:  With respect to Sub-Predicate D, there

10  was a conspiracy and, again, a conspiracy is an agreement

11  between two or more people to commit a crime, you being one of

12  those people, and it was an agreement to conduct financial

13  transactions affecting interstate commerce.  Those

14  transactions involved the proceeds of mail fraud, wire fraud,

15  embezzlement of Metro-ILA pension and welfare benefit funds

16  knowing that the property involved in those transactions

17  involved the proceeds of unlawful activity with the intent to

18  promote the carrying on of that unlawful activity and knowing

19  that the transactions were designed to conceal and disguise

20  the source, nature, location and ownership of those funds,

21  proceeds of those financial transactions and to avoid making

22  the necessary currency transaction reports.

23         Did you have such an agreement with one or more

24  other persons to do all those things?

25         DEFENDANT BELLOMO:  Yes, your Honor.

1          THE COURT:  Mr. Ragusa, did you hear all the

2    questions that I put to Mr. Bellomo?

3          DEFENDANT RAGUSA:  Yes.

4          THE COURT:  Were you associated with a group of

5    persons, those persons being associated in fact, for the

6    purpose of achieving some common objective, namely money for

7    its members and associates through the commission of a variety

8    of crimes?

9          DEFENDANT RAGUSA:  Yes.

10          THE COURT:  This association of persons in fact had

11    an ongoing formal or informal structure?

12          DEFENDANT RAGUSA:  Yes.

13          THE COURT:  It had leaders, it had members, it had

14    persons who had different levels of membership and association

15    in that group?

16          DEFENDANT RAGUSA:  It was an association in fact.

17          THE COURT:  And did that association have a formal

18    or informal structure?

19          DEFENDANT RAGUSA:  Yes.

20          THE COURT:  And you participated in the affairs of

21    that association in fact, that enterprise?  An association in

22    fact, persons associated in fact is an enterprise. You

23    participated in the affairs of that enterprise?

24          DEFENDANT RAGUSA:  Yes.

25          THE COURT:  You participated in some meaningful and

1    knowing way?

2         DEFENDANT RAGUSA:  Yes.

3         THE COURT:  And you participated in it for the

4    purpose of assisting in the achievement of the purposes of

5    that enterprise?

6         DEFENDANT RAGUSA:  Yes.

7         THE COURT:  And in connection with that enterprise,

8    you committed two racketeering acts, the first one being a

9    conspiracy to affect commerce by extortion.  Again, when I say

10   conspiracy, a conspiracy is simply defined as an agreement

11   between two or more persons to commit a crime.

12        Did you have an agreement or an understanding, a

13   meeting of the minds, with one or more other persons that you

14   were going to obtain money from the owners, employees, agents

15   of businesses operating on the piers of northern New York,

16   metropolitan New York, northern New Jersey and Miami?

17        DEFENDANT RAGUSA:  I had such an agreement with some

18   of my codefendants.

19        THE COURT:  And the agreement was to obtain money

20   from these persons with their consent but their consent was

21   induced by the use, the actual use or threatened use of fear

22   or violence; is that true?

23        THE DEFENDANT:  It was through fear of economic

24   harm.

25        THE COURT:  And is it also true that you had that

1    same agreement with respect to one or more other persons with

2    respect to ILA, labor union positions, obtaining money, wages,

3    employee benefits from union members with their consent which

4    was obtained -- the consent having been obtained by the use or

5    threatened use of fear or harm?

6                DEFENDANT RAGUSA:  I had such an agreement with some

7    of my codefendants through the use of economic harm.

8                THE COURT:  With respect to Racketeering Act Three,

9    were you a participant in a scheme to defraud employees of

10   pension and welfare benefit plans which were jointly

11   controlled by an organization which has been referred to here

12   as Metro-ILA, a scheme to defraud the employee pension and

13   welfare benefit plans of that organization by depriving the

14   beneficiaries of those plans of the right to the honest

15   services of those plans' officers, servants and fiduciaries?

16               DEFENDANT RAGUSA:  I conspired with some of my

17   codefendants, nobody at Metro.

18               THE COURT:  I said with your codefendants.

19               You participated in that scheme with one or more of

20   the persons who were named as codefendants in that count?

21               DEFENDANT RAGUSA:  Yes.

22               THE COURT:  And you also were engaged in a

23   conspiracy, you had an agreement with one or more of your

24   codefendants to conduct financial transactions affecting

25   interstate commerce involving the proceeds of mail fraud, wire

1    fraud, embezzlement of Metro-ILA funds knowing that the

2    property involved in those financial transactions were the

3    proceeds of that unlawful activity?

4            DEFENDANT RAGUSA:  Yes.

5            THE COURT:  Designed for the purpose of carrying on

6    than unlawful activity and to disguise the nature and the

7    course and location of those unlawful proceeds; is that true?

8    You had such an agreement with one or more other persons?

9            DEFENDANT RAGUSA:  Yes, one of my codefendants.

10           THE COURT:  Anything else, Mr. Weinstein?

11           MR. WEINSTEIN:  No.

12           THE COURT:  Anything else, Mr. Lee?

13           MR. LEE:  No.

14           THE COURT:  Mr. Brietbart or Ms. Edwards, anything

15   else?

16           MS. EDWARDS:  No, your Honor.

17           THE COURT:  Mr. Bellomo and Mr. Ragusa have been

18   fully advised of their respective rights which I'm satisfied

19   they understood.  With that understanding, they knowingly and

20   voluntarily pleaded guilty to Count One, Racketeering Acts One

21   and Three of an indictment which is CR-02-140(S-2).  There is

22   a factual basis for the plea.  Whether I will or whether I

23   will not accept the 11(c)(1)(c) agreement I will defer until

24   after I see the Presentence Report.

25               If I reject the plea agreement, you can withdraw

1   your plea.

2            Do you understand that?

3            DEFENDANT BELLOMO:  Yes.

4            THE COURT:  Do you understand that, Mr. Ragusa?

5            DEFENDANT RAGUSA:  Yes.

6            THE COURT:  Anything else?

7            THE CLERK:  Mr. Ragusa to be sentenced June 30 at

8    10:00 a.m.  Mr. Bellomo on June 30 at 10:30.

9            MR. LEE:  Thank you, your Honor.

10           THE COURT:  What is the bail situation with respect

11   to Mr. Ragusa?

12           MR. WEINSTEIN:  My recollection is that Mr. Ragusa

13   is presently released on a substantial security bond and the

14   government requests that it be continued.

15           MR. LEE:  I certainly join in that.

16           THE COURT:  Do you have a sentencing date?

17           THE CLERK:  June 30 at 10:00.

18           THE COURT:  Thank you very much.

19           MR. LEE:  Thank you, your Honor.

20           (The matter was concluded.)

21

22

23

24

25